# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
## 3:04cv149

| | |
|---|---|
| TIMOTHY N. ELLERBY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM AND ORDER** |
| ) | |
| BRANCH BANKING AND TRUST CO., INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on the motion of Defendant Branch Banking and Trust Co., Inc., ("BB&T") for summary judgment (Doc. No. 28), with supporting memorandum and appendix (Doc. No. 29, 30), Plaintiff Timothy N. Ellerby's response with appendix (Doc. No. 32, 33), and BB&T's reply (Doc. No. 34). For the reasons stated below, the Court **GRANTS** the defendant's motion for summary judgment.

**I.      INTRODUCTION**

Ellerby brought this action asserting race discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; wrongful termination pursuant to 42 U.S.C. § 1981; and wrongful discharge in violation of public policy pursuant to the Equal Employment Practices Act, N.C. GEN. STAT. § 143-422.1 et seq. (Doc. No. 1: Complaint).

Ellerby, an African-American male, was a branch manager at United Carolina Bank's Ponderosa branch in Fayetteville, North Carolina when BB&T acquired the bank in 1997. BB&T granted Ellerby's request to transfer to a BB&T branch in Charlotte in 1998. By October 1999, Ellerby was employed at BB&T's Woodlawn branch in Charlotte, where he remained until being terminated in 2003.

Under BB&T policy, a lender was responsible to ensure that all necessary documentation was completed, filed, and sent for processing after closing a loan. An "exception" would occur if the necessary loan documentation remained incomplete or inaccurate thirty days after the closing. BB&T classified exceptions into two types: lien exceptions and loan documentation exceptions. A lien exception occurred when the lender had not properly perfected the bank's security interest in property used as collateral. A loan documentation exception occurred when the lender did not correct defects in the loan paperwork, such as incomplete contact information, missing signatures, missing forms, incomplete forms, and miscalculations. Lien exceptions were considered more serious than loan documentation exceptions because lien exceptions directly put the bank's property interests at risk.

Ellerby's work at BB&T produced a high exceptions rate. In December 2002, his exceptions rate was 32.9%, where the bank's goal was 10%. One of his lien exceptions resulted in a loss of approximately $100,000 to the bank in 2002 because Ellerby failed to file a deed of trust in relation to a loan. In January 2003, John Cole, Regional Retail Banking Manager for the Charlotte Metro Region, announced a region-wide goal to reduce exceptions to below 10% by April 2003. In February 2003, Cole met with Ellerby personally to stress that he had to reduce his exceptions rate or action would be taken, which Ellerby understood could include termination. In April 2003, Ellerby's annual performance review documented that his exception rate of 32% was not acceptable and his high number of lien exceptions represented a significant risk to the bank.

When Ellerby failed to meet the regional goal by April 2003, BB&T assigned two employees to help Ellerby lower his exceptions. One of the employees reported that Ellerby did little, if anything, to help her clear outstanding exceptions. Even when Ellerby promised to take

action, he failed to follow through. In July 2003, Ellerby's direct supervisor, Chellie Phifer, placed him on a sixty-day performance improvement plan with requirements that his exception rate fall below 15% by August 21, 2003, and below 10% by September 21, 2003, or he would face disciplinary action, including termination. As part of the plan, Phifer met weekly with Ellerby and his assistant to review his exceptions reports. Phifer found that most of the work was being done by the assistant and that Ellerby failed to follow through with promised actions to clear the exceptions. On August 21, 2003, Ellerby's exception rate was 17%. Phifer met with Ellerby and terminated him effective August 22, 2003. Ellerby's position was subsequently filled by a white female.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. Evidence that is not supported is insufficient to defeat a motion for summary judgment. Id. at 323-24. The nonmoving party

3

must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); *see also* Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995). When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. However, "a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Id. at 252.

### III. DISCUSSION

#### A. Title VII Claim

Ellerby alleges that BB&T treated him differently because of his race. He claims he was performing adequately and that other non-African-American employees with higher exception rates and losses were not terminated. While Ellerby has not presented any direct evidence of discriminatory intent, he asserts he has satisfied the test established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). (Doc. No. 32: Memorandum at 5). That decision requires a plaintiff to prove a prima facie case of discrimination by a preponderance of the evidence. Id. at 802. If he succeeds, the employer must present evidence of a legitimate, non-discriminatory reason for terminating the employee. Id. If the employer does so, the burden shifts back to the plaintiff to show that the articulated reason for the termination was merely a pretext for discrimination. Id. at 804; see also Mackey v. Shalala, 360 F.3d 463 (4th Cir. 2004).

##### 1. Prima facie case

To state a prima facie case of discrimination, a plaintiff must show: (1) that he is a member of a protected class; (2) that he suffered from an adverse employment action; (3) that at the time the employer took the adverse employment action he was performing at a level that met

4

his employer's legitimate expectations; and (4) that the position was filled by a similarly qualified applicant outside the protected class. King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003). Ellerby is a member of a protected racial class, did suffer an adverse employment action, and was replaced by an employee outside his class. However, he has failed to produce evidence from which a reasonable jury could conclude he was performing satisfactorily at the time of his termination. His arguments comparing his performance to others who were not terminated are more appropriately directed at the issue of whether BB&T's explanation for his termination was a pretext for discrimination. Id. at 149-150.

During the time of Ellerby's employment, BB&T had a bank-wide goal of maintaining exception rates below 10%. Ellerby admitted he was the lender with the highest lien exception rate. (Doc. No. 30, BB&T Appendix, Ellerby at 110). Ellerby did not meet the region-wide goal of 10% by April 2003, even after being warned to do so by the regional manager. In fact, his rate remained at 32%, which BB&T recognized as a substantial risk. By July 2003, Ellerby had still failed to meet the goal, despite BB&T's assignment of two employees to assist him. By August 12, 2003, his rate was 20% and he did not meet the 15% requirement by August 21, 2003. Ellerby counters that the he was "making strides" towards the requirement and that the bank failed to warn him of his current percentage before his termination. (Doc. No. 32, Memorandum at 3). However, Ellerby's own testimony cannot establish a genuine issue as to whether he was meeting BB&T's expectations. King, 328 F.3d at 149. Thus, no reasonable juror could find that Ellerby was performing at a level that met his employer's legitimate expectations at the time of his termination. His exception rate was at time more than three times higher than the bank-wide goal and never progressed below 15% as required by his performance plan. Therefore, Ellerby has failed to establish a prima facie case of discrimination and granting summary judgment against him is proper.

2. Legitimate, non-discriminatory reason for the alleged unlawful action.

Even if Ellerby had made a prima facie showing that he was discriminated against because of his race, he has not overcome the second and third steps of the McDonnell Douglas framework. BB&T provided a legitimate and non-discriminatory reason for Ellerby's termination: his failure to meet exception rate goal. Ellerby admits that "high exception rates always plagued" him (Doc. No. 32, Memorandum at 11). BB&T provided substantial evidence of the steps taken to help Ellerby diminish the risk of loss he posed to the bank. Despite the provision of additional staff and the extension of deadlines, Ellerby not only failed to meet the clearly stated requirements, but his conduct also evidenced an unwillingness to meet BB&T's expectations. Therefore, the burden shifts back to Ellerby to demonstrate that BB&T's proffered reason for his termination was a pretext for racial discrimination.

3. Pretext

No proof shows that BB&T's proffered reason for terminating Ellerby was a pretext for discrimination. Ellerby admitted that it was not until after his inaction caused the bank to lose nearly $100,000 that his regional manager became "prejudiced" against him and subjected him to increased scrutiny. (Doc. No. 32, Memorandum at 9, 10). Even so, Ellerby has attempted to establish pretext by claiming that similarly-situated non-African Americans were treated more favorably.

To establish such a claim, a plaintiff is required to prove "that the 'comparables' are similarly situated in all respects," including having the same supervisor and committing the same conduct without differentiating or mitigating circumstances. Mitchell v. Toledo Hospital, 964 F.2d 577, 583 (6th Cir. 1992); accord Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 778

(8th Cir. 1995) (must be similarly situated in all relevant respects); Smith v. Stratus Computer, Inc., 40 F.3d 11, 17 (1st Cir. 1994) (same). In support his claim, Ellerby refers to conclusory allegations in his Complaint, Exhibit One attached to his Complaint, and conduct of three white women who were not terminated. (Doc. No. 32, Memorandum at 3, 6, 10).

Reliance on the allegations in Ellerby's complaint is insufficient to defeat a motion for summary judgment. Celotex, 477 U.S. at 323. Exhibit One is a simply chart of "Regional Loan Documentation Exceptions 2003" listing names and percentages. (Doc. No. 1, Complaint). No information on the chart reflects the race, conduct, or any mitigating circumstances of the persons listed. In the absence of proof from the employer or its job performance reviews, expert opinion based on reasoned analysis is required to measure a plaintiff's conduct against other employees. King, 328 F.3d at 153. The record in this case is devoid of any such proof, either from the company directly or from an expert, establishing that Ellerby was similarly situated in all respects to non-African-Americans who were not terminated. Therefore, Ellerby has fallen well short of establishing "some evidence on which a juror could reasonably base a finding that discrimination motivated the challenged employment action." Mackey, 360 F.3d at 469 (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000)). Thus, summary judgment on this claim is proper. Anderson, 477 U.S. at 252.

    B.    42 U.S.C. § 1981

42 U.S.C. § 1981(c) provides, "The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c). The standard for establishing a claim under § 1981 is the same as under § 2000e. White v. BFI Waste Services, Inc., 375 F.3d 288, 295 (4th Cir. 2004). Therefore, for the reasons stated above, Ellerby has failed to make sufficient showing to defeat BB&T's motion for summary judgment on his § 1981 claim.

C.     NCEEPA CLAIMS

Finally, Ellerby claims that BB&T's actions violate the North Carolina Equal Employment Practices Act, N.C. GEN. STAT. § 143-422.1 et seq. ("NCEEPA"). The NCEEPA provides, "It is the public policy of [North Carolina] to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ fifteen or more employees." N.C. GEN. STAT. § 143-422.2. The North Carolina Supreme Court has adopted the Title VII evidentiary standards for claims under the NCEEPA. Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995) (citing North Carolina Dep't of Correction v. Gibson, 301 S.E.2d 78, 82-85 (N.C. 1983). As detailed above, Ellerby as failed to establish a claim under Title VII; therefore summary judgment on his state law claim is proper as well.

## IV.     CONCLUSION

Ellerby has not produced sufficient evidence to withstand BB&T's motion for summary judgment. After assessing the evidence in a light most favorable to Ellerby, the Court finds he has failed to establish a prima facie case of discrimination relating to BB&T's decision to terminate him. Even if he had, no reasonable juror could conclude that BB&T's proffered non-discriminatory reason for the termination was a pretext for racial bias.

**IT IS, THEREFORE, ORDERED** that BB&T's motion for summary judgment (Doc. No. 28) is **GRANTED**, and this matter is dismissed with prejudice in its entirety.

**Signed: November 3, 2005**

_Robert J. Conrad, Jr._
Robert J. Conrad, Jr.
United States District Judge